UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

ERIC ANDREW GARDNER,

                    Plaintiff,                              Case No. 2:16-cv-3

v.                                                          Honorable R. Allan Edgar

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

                    Defendants.
_____/

**<u>OPINION</u>**

          This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.

The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation

Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any

prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a

claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such

relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro*

*se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's

allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504

U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure

to state a claim against Defendants Michigan Department of Corrections (MDOC), Unknown Bureau

of Healthcare Services Administrator, Melissa LaPlaunt, Patricia Lamb, and Tom Osier.  The Court

will serve the complaint against Defendants Michael Millette, Susan Wilson, Gerald Covert,

Unknown Paquette, Nicki Monroe, Penny Fillion, Robert Crompton, Brian Majerczyk, L. Rutowski, and B. Sivec.

**Discussion**

I.     Factual allegations

Plaintiff Eric Andrew Gardner, a state prisoner currently confined at the Oaks Correctional Facility (ECF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Michigan Department of Corrections, Unknown Bureau of Healthcare Services Administrator, Physician's Assistant Michael Millette, Nurse Practitioner Susan Wilson, Nursing Supervisor Gerald Covert, Physician's Assistant Unknown Paquette, Registered Nursing Supervisor Nicki Monroe, Health Unit Manager Melissa LaPlaunt, Nursing Supervisor Penny Fillion, Registered Nurse Patricia Lamb, Assistant Mental Health Services Director Tom Osier, Dr. Robert Crompton, Chief Psychologist Brian Majerczyk, Psychologist L. Rutowski, and Licensed Medical School Worker B. Sivec.

Plaintiff contends that the named Defendants in this case violated his rights under the Eighth Amendment when they were deliberately indifferent to his serious medical needs.  In Plaintiff's complaint, he alleges that while he was housed at the Thumb Correctional Facility in 2007, his left inguinal surgical scar tore open.  Plaintiff has been complaining of pain ever since that date.  In 2012, while Plaintiff was confined at the Kinross Correctional Facility (KCF), he suffered from a perforated large intestine and received surgery at the War Memorial Hospital.  Plaintiff states that approximately one foot of large intestine, an unknown mass, and his appendix were all removed. The surgeon, Dr. McCollough, told Plaintiff that if he had any problems, he should contact Dr. McCollough immediately.  Plaintiff has complained of severe bowel pain since that date.  Plaintiff

was transferred from KCF to the Chippewa Correctional Facility (URF) on August 14, 2014, after which he was denied any follow-up care for his abdominal complaints.

On February 11, 2015, Plaintiff was working in the yard crew removing snow drifts. While working, Plaintiff "felt and heard" his left forearm "snap." Plaintiff's supervisor took him to health care, where he was given generic Tylenol and a plastic bag to put snow in, despite the fact that Plaintiff had "multiple detached tendons protruding" from his left arm. On February 18, 2015, an x-ray was done and the x-ray technician showed Plaintiff a definitive break in the left radius bone. However, Defendant Millette reviewed the x-ray and told Plaintiff that he could not help him. Plaintiff continued to kite health care for the severe pain and on March 18, 2015, he was seen by Defendants Covert and Wilson. Plaintiff argued about the lack of care, which resulted in his placement in segregation. Defendants Paquette, Fillion, and Millette saw Plaintiff for his injured arm and diagnosed him with tennis elbow, despite the fact that Plaintiff had swelling, bruising, and "multiple detached tendons" on his left forearm.

On January 15, 2015, while Plaintiff was confined at URF, he was assigned a "bunky" from quarantine named Ray Geddert, who was infected with scabies. Inmate Geddert was undiagnosed for a period of 6 to 8 weeks. Once Geddert was diagnosed, Defendants Covert and Wilson told him that he was not contagious and treated his condition with "Kwell" lotion. Plaintiff states that at some point, he became infected with scabies. On March 18, 2015, Plaintiff told Defendants Covert and Wilson that he had scabies, but they responded that he did not have scabies. Plaintiff argued and was placed in segregation. Defendants Millette, Paquette, and Fillion all diagnosed Plaintiff as purposely scratching himself in order to cause a rash. Plaintiff filed grievances

and kited on numerous occasions.  Plaintiff also had to pay unnecessary co-pays on six occasions, to no avail.  At this point, the scabies had spread from Plaintiff's legs to his neck.

Plaintiff was transferred to ECF on July 6, 2015, where he continued to kite for medical assistance.  On July 24, 2015, Defendant Millette traveled from URF and examined Plaintiff while he was in full restraints.  Defendant Millette diagnosed Plaintiff as having tennis elbow and concluded that Plaintiff's rash was the result of him scratching himself.  On August 7, 2015, Defendant Monroe saw Plaintiff regarding his rash and determined that it was not the result of scabies.  Defendant Monroe also diagnosed Plaintiff with tennis elbow, despite the fact that Plaintiff's forearm was "visually deformed."

On August 15, 2015, Defendant Crompton saw Plaintiff and diagnosed him with eczema and stated that Plaintiff's abdominal symptoms were the result of scar tissue from his surgery.  On August 20, 2015, Plaintiff was seen by Nurse Practitioner J. Russell, who finally diagnosed Plaintiff with scabies and prescribed Permethrin to kill the infestation.  Plaintiff states that he required two rounds of treatment to completely kill the scabies.

Plaintiff began a hunger strike on August 15, 2015, and refused to eat for 23 days, causing his weight to go from 178 pounds to 123 pounds.  During this time, Plaintiff was denied any offsite treatment by ECF health care and mental health staff.  Defendants Majerczyk, Rutowski, and Sivec all knowingly falsified "misconduct sanction screening forms."  Plaintiff filed a grievance and on October 13, 2015, he was placed on modified access to the grievance procedure.  On October 20, 2015, Defendant Crompton examined Plaintiff while he was in full body restraints and diagnosed Plaintiff with having tennis elbow, despite the fact that Plaintiff's forearm was swollen, bruised, and had multiple detached tendons.  Defendant Crompton continued to deny Plaintiff offsite treatment

-4-

for any of his medical problems.  Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

-5-

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially the court notes that Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

-6-

The Court further notes that liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept.*

-7-

*of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991).  In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability.  *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988).  Finally, supervisory liability claims cannot be based on simple negligence.  *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Unknown Bureau of Healthcare Services Administrator, Melissa LaPlaunt, Patricia Lamb, and Tom Osier were personally involved in the activity which forms the basis of his claim.  The only roles that Defendants Unknown Bureau of Healthcare Services Administrator, Melissa LaPlaunt, Patricia Lamb, and Tom Osier had in this action involve the denial of administrative grievances or the failure to act.  Defendants Unknown Bureau of Healthcare Services Administrator, Melissa LaPlaunt, Patricia Lamb, and Tom Osier cannot be liable for such conduct under § 1983.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000).  Accordingly, the Court concludes that Plaintiff's claims against Defendants Unknown Bureau of Healthcare Services Administrator, Melissa LaPlaunt, Patricia Lamb, and Tom Osier are properly dismissed for lack of personal involvement.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants MDOC, Unknown Bureau of Healthcare Services Administrator, Melissa LaPlaunt, Patricia Lamb, and Tom Osier will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint

against Defendants Michael Millette, Susan Wilson, Gerald Covert, Unknown Paquette, Nicki Monroe, Penny Fillion, Robert Crompton, Brian Majerczyk, L. Rutowski, and B. Sivec.

An Order consistent with this Opinion will be entered.

Dated:  3/10/2016            /s/ R. Allan Edgar
                            R. ALLAN EDGAR
                            UNITED STATES DISTRICT JUDGE