UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ERIC ANDREW GARDNER,

    Plaintiff,

v.

Case No. 2:16-cv-3
HON. ROBERT HOLMES BELL

MICHAEL MILLETTE, et al.,

    Defendants.
_____/

REPORT AND RECOMMENDATION

    Plaintiff Eric Andrew Gardner, a prisoner incarcerated at the Michigan Reformatory in Ionia, Michigan, filed this 42 U.S.C. § 1983 action against the remaining Defendants Michael Millette, Susan Wilson, Gerald Covert, Unknown Paquette, Nicki Monroe, Penny Fillion, Robert Crompton, Brian Majerczyk, L. Rutowski, and B. Sivec. Plaintiff asserts multiple incidents of deliberate indifference to his serious medical needs. Defendants Covert, Monroe, Fillion, Majerczyk, Rutowski, and Sivec filed a motion to sever based on misjoinder of parties and claims (ECF No 24). Defendants Wilson, Crompton, Millette, and Paquette also filed a motion to sever based on misjoinder of parties and claims (ECF No 32). Plaintiff filed a response brief (ECF No. 41).

    Defendants argue that Plaintiff is asserting four separate acts of deliberate indifference to his medical needs that arose during his incarceration at two separate MDOC facilities. The facts were summarized in a previous opinion.

> Plaintiff contends that the named Defendants in this case violated his rights under the Eighth Amendment when they were deliberately indifferent to his serious medical needs. In Plaintiff's complaint, he

alleges that while he was housed at the Thumb Correctional Facility in 2007, his left inguinal surgical scar tore open. Plaintiff has been complaining of pain ever since that date. In 2012, while Plaintiff was confined at the Kinross Correctional Facility (KCF), he suffered from a perforated large intestine and received surgery at the War Memorial Hospital. Plaintiff states that approximately one foot of large intestine, an unknown mass, and his appendix were all removed. The surgeon, Dr. McCollough, told Plaintiff that if he had any problems, he should contact Dr. McCollough immediately. Plaintiff has complained of severe bowel pain since that date. Plaintiff was transferred from KCF to the Chippewa Correctional Facility (URF) on August 14, 2014, after which he was denied any follow-up care for his abdominal complaints.

On February 11, 2015, Plaintiff was working in the yard crew removing snow drifts. While working, Plaintiff "felt and heard" his left forearm "snap." Plaintiff's supervisor took him to health care, where he was given generic Tylenol and a plastic bag to put snow in, despite the fact that Plaintiff had "multiple detached tendons protruding" from his left arm. On February 18, 2015, an x-ray was done and the x-ray technician showed Plaintiff a definitive break in the left radius bone. However, Defendant Millette reviewed the x-ray and told Plaintiff that he could not help him. Plaintiff continued to kite health care for the severe pain and on March 18, 2015, he was seen by Defendants Covert and Wilson. Plaintiff argued about the lack of care, which resulted in his placement in segregation. Defendants Paquette, Fillion, and Millette saw Plaintiff for his injured arm and diagnosed him with tennis elbow, despite the fact that Plaintiff had swelling, bruising, and "multiple detached tendons" on his left forearm.

On January 15, 2015, while Plaintiff was confined at URF, he was assigned a "bunky" from quarantine named Ray Geddert, who was infected with scabies. Inmate Geddert was undiagnosed for a period of 6 to 8 weeks. Once Geddert was diagnosed, Defendants Covert and Wilson told him that he was not contagious and treated his condition with "Kwell" lotion. Plaintiff states that at some point, he became infected with scabies. On March 18, 2015, Plaintiff told Defendants Covert and Wilson that he had scabies, but they responded that he did not have scabies. Plaintiff argued and was placed in segregation. Defendants Millette, Paquette, and Fillion all diagnosed Plaintiff as purposely scratching himself in order to cause a rash. Plaintiff filed grievances and kited on numerous occasions. Plaintiff also had to pay unnecessary co-pays on six occasions, to no avail. At this point, the scabies had spread from Plaintiff's legs to his neck.

>Plaintiff was transferred to ECF on July 6, 2015, where he continued to kite for medical assistance. On July 24, 2015, Defendant Millette traveled from URF and examined Plaintiff while he was in full restraints. Defendant Millette diagnosed Plaintiff as having tennis elbow and concluded that Plaintiff's rash was the result of him scratching himself. On August 7, 2015, Defendant Monroe saw Plaintiff regarding his rash and determined that it was not the result of scabies. Defendant Monroe also diagnosed Plaintiff with tennis elbow, despite the fact that Plaintiff's forearm was "visually deformed."
>
>On August 15, 2015, Defendant Crompton saw Plaintiff and diagnosed him with eczema and stated that Plaintiff's abdominal symptoms were the result of scar tissue from his surgery. On August 20, 2015, Plaintiff was seen by Nurse Practitioner J. Russell, who finally diagnosed Plaintiff with scabies and prescribed Permethrin to kill the infestation. Plaintiff states that he required two rounds of treatment to completely kill the scabies.
>
>Plaintiff began a hunger strike on August 15, 2015, and refused to eat for 23 days, causing his weight to go from 178 pounds to 123 pounds. During this time, Plaintiff was denied any offsite treatment by ECF health care and mental health staff. Defendants Majerczyk, Rutowski, and Sivec all knowingly falsified "misconduct sanction screening forms." Plaintiff filed a grievance and on October 13, 2015, he was placed on modified access to the grievance procedure. On October 20, 2015, Defendant Crompton examined Plaintiff while he was in full body restraints and diagnosed Plaintiff with having tennis elbow, despite the fact that Plaintiff's forearm was swollen, bruised, and had multiple detached tendons. Defendant Crompton continued to deny Plaintiff offsite treatment for any of his medical problems. Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

ECF No. 5, PageID.48-51.

Defendants argue that Plaintiff has presented four distinct claims in his complaint. Claim one: While Plaintiff was housed in the Chippewa Correctional Facility between January 15 and March 18, 2015, Defendants Covert, Wilson, Millette, Paquette, and Fillion failed to diagnose and treat Plaintiff's scabies. Claim two: While Plaintiff was housed in the Chippewa Correctional Facility between February 11 and March 18, 2015, Defendants Millette, Covert, Wilson, Paquette,

and Filion failed to diagnose and treat Plaintiff for a broken arm. Claim three: While Plaintiff was housed in the Oaks Correctional Facility between July 24 and October 20, 2015, Defendants Millette, Monroe, and Crompton failed to diagnose and treat Plaintiff for Scabies and a broken elbow. Claim four: After August 15, 2015, Defendants Majerczyck, Rutowski, and Sivec falsified Misconduct Screening Forms. Defendants argue that only a single claim should proceed in this case and all other unrelated claims should be dismissed.

Plaintiff argues that he is asserting three "chief complaints" against all the Defendants. Claim one: Arises out his 2012 colon surgery and complications, including a hernia, GI pain and swelling, difficulties with bathroom usage, and digestive track complications which caused Plaintiff to go on hunger strikes and necessitated his need for psychological services. Claim two: Involves Plaintiff's exposure to scabies on March 15, 2015. Plaintiff was bitten by parasites for over five months while confined in segregation. Plaintiff received no help from medical staff or psychology staff. Claim three: Since March 2015, Plaintiff suffered with a work related injury involving a forearm fracture. All Defendants failed to intervene and provide appropriate care. Plaintiff asserts that these three claims are linked and involve all the named Defendants.

Federal Rule of Civil Procedure 20(a)(2) permits the joinder of defendants in one action under certain circumstances:

> **(2) *Defendants.*** Persons . . .may be joined in one action as defendants if:
>
> **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> **(B)** any question of law or fact common to all defendants will arise in this action.

Thus "[a] buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In *George,* the court severed unrelated claims:

> "A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that this 50–claim, 24–defendant suit produced but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g). George was trying not only to save money but also to dodge that rule. He hoped that if even 1 of his 50 claims were deemed non-frivolous, he would receive no "strikes" at all, as opposed to the 49 that would result from making 49 frivolous claims in a batch of 50 suits.

*Id.*

Where a plaintiff improperly joins claims and defendants, Federal Rule of Civil Procedure 21 provides that the court may "on just terms" either (1) add or drop parties or (2) sever the claims against the parties. *Kitchen v. Heyns*, 802 F.3d 873, 875 (6th Cir. 2015). "To remedy misjoinder, . . . a court may not simply dismiss a suit altogether." *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006). "Instead, the court has two remedial options: (1) misjoined parties may be dropped 'on such terms as are just'; or (2) any claims against misjoined parties 'may be severed and proceeded with separately.'" *Id.* (citation omitted). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have

important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *Id.* This court has severed unrelated claims in prisoner civil rights actions by dismissing the unrelated claims and parties without prejudice so that the plaintiff can file new causes of action in separate lawsuits. *Alexander v. Fillion*, 2:15-cv-13, (ECF No. 95) (W.D. Mich. October 7, 2015); *Cary v. Robinson*, 13-cv-431, (ECF No. 47) (W. D. Mich. Sept. 23, 2014), *Carney v. Treadeau*, 07-cv-83, (ECF No. 52) (W.D. Mich 2008).

In doing so, the court should be mindful of a party's ability to resubmit dismissed claims in new causes of action. As Judge Neff pointed out in *Crawford v. Prison Health Services*, 1:12-cv-409 (ECF No. 46) (W.D. Mich. 2012):

> At least three judicial circuits have interpreted "on terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F. 3d 741, 745 (8th Cir. 2008). (quoting *Elmor v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)) see also *DirectTV, Inc.*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandland*, 532 F.3d at 746; *DirectTV*, 467 F.3d at 846-47; *Michaels Building Co.*, 848 F.2d at 682.

*Id.* at 5, PageID. 545.

In the opinion of the undersigned, Plaintiff has raised four claims in his complaint and has labeled them Statement of Related Claim #1-#4. (ECF No. 1). Claims one through three relate to Plaintiff's medical care and involved common Defendants. Claim four states;

> ECF QMHP's Brian Majerczyk, L. Rutowski, and B. Sivec are all knowingly falsifying CSJ-330/331 Misconduct Sanction Screening forms by completing these forms themself's [and] are not conducting these evaluations with the Plaintiff. A grievance was filed and the Plaintiff was placed on grievance restriction on 10-13-

> 15.  Since then over 20 misconducts have been written on the Plaintiff in retaliatory and fraudulent means with not one CSJ-330 331 evaluation being completed [with] the Plaintiff.  A separate complaint will be filed against ECF URF custody (MDOC) in regards to retaliation.

PageID.8.  In the opinion of the undersigned, Plaintiff's claim #4 is unrelated to his medical claims and is being asserted against Defendants that were not involved in the alleged denial of medical care.  It is therefore recommended that the claims asserted against Defendants Majerczyk, Rutowski, and Sivec be severed from this case and dismissed without prejudice. Clearly, dismissal of parties or claims could cause a statute of limitations problem.  However, in this case dismissal without prejudice will not cause a problem because the statute of limitations for § 1983 claims in Michigan is three years.  *Id.*  Plaintiff's claims against Defendants Majerczyk, Rutowski, and Sivec accrued in 2015.  Plaintiff filed this lawsuit on January 8, 2016. Michigan law tolls the "limitation period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 App'x 610, 611 (6th Cir. 2003). Plaintiff has sufficient time to re-file his dismissed claims if he so chooses.  Therefore, it is recommended that the court dismiss Plaintiff's misjoined claims without prejudice.

      Accordingly, it is recommended that Defendants Wilson, Crompton, Millette, and Paquette's Motion to Sever Based Upon Misjoinder of Parties and Claims (ECF Nos. 32 ) be denied. It is recommended that Defendants Covert, Monroe, Fillion, Majerczyk, Rutowski, and Sivec's Motion to Sever Based Upon Misjoinder of Parties and Claims (ECF No. 24) be granted, in part, dismissing Defendants Majerczyk, Rutowski, and Sivec from this action without prejudice.  If the Court adopts this recommendation the remaining claims will be Plaintiff alleged

denial of medical care in violation of the Eighth Amendment against Defendants, Covert, Monroe, Fillion, Wilson, Crompton, Millette, and Paquette.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: October 24, 2016          */s/ Timothy P. Greeley*
                                           TIMOTHY P. GREELEY
                                           UNITED STATES MAGISTRATE JUDGE