UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ERIC GARDNER,

        Plaintiff,                Case No. 2:16-cv-3

v.                                           HON. GORDON J. QUIST

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by state prisoner Eric Gardner pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants failed to treat his serious medical conditions in violation of the Eighth Amendment. Defendants Gerald Covert, Nicki Monroe, and Penny Filion filed a motion for summary judgment (ECF No. 55) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response (ECF No. 62). Defendants Susan Wilson, Dr. Robert Crompton, Michael Millette, and Danielle Paquette filed a motion for summary judgment (ECF No. 68). Plaintiff filed a response and requests a declaratory judgment with an award of compensatory damages in the amount of $50,000.00 and punitive damages in the amount of $350,000.00. (ECF No. 77).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for

determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so

powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-1860 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

4

*Mattox v. Edelman*, 2017 WL 992510, slip op. at 8-9 (6th Cir. 2017).[1]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to PD 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ V of PD 03.02.130.

---

[1] In *Holloway v. Mclaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved. The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id*. at 3. In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff' regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  slip op. at 16. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

*Id.* at ¶Q. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with PD 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Defendants Covert, Filion, and Monroe argue that Plaintiff failed to properly exhaust his claims against them and Defendants NP Wilson, PA Paquette, and Dr. Crompton argue that Plaintiff failed to exhaust his gastrointestinal and scabies claims against them. Defendants NP Wilson, PA Paquette, and Dr. Crompton concede that Plaintiff exhausted his left arm claim against them. Defendant PA Millette concedes that Plaintiff exhausted the claims asserted against him.

Plaintiff alleges that he exhausted his claims against Defendant Covert in grievance URF 1502-0487-28D. (ECF No. 56-4, PageID.425-430). Plaintiff's grievance was rejected at Step I for including harassing and demeaning language in his grievance. At Step II, the grievance was rejected for being untimely. The Step III denial upheld the Step I and II responses. Plaintiff failed to properly present this grievance at each Step of the grievance process. Accordingly, in the opinion of the undersigned, Plaintiff has not shown that he properly filed a grievance against Defendant Covert.

Plaintiff concedes that he failed to identify Defendant Filion in Grievance URF 1505-1265-12E and states that he mistakenly named Melissa LaPlaunt in that grievance. (ECF No. 66-3, PageID.333-337). Plaintiff asserts that he named Defendant Filion in other grievances, but concedes that those grievances were rejected. In the opinion of the undersigned, Plaintiff has not shown that he properly filed a grievance against Defendant Filion.

Plaintiff asserts that he exhausted his claims against Defendant Nicki Monroe in grievance ECF 2015-08-2410-28C (ECF No. 56-4, PageID.388-385) and ECF 2015-10-2925-28A (ECF No. 56-4, PageID.338-341). Both of these grievances were rejected. Accordingly, in the opinion of the undersigned, Plaintiff has failed to show that he properly exhausted his claims against Defendant Monroe.

Plaintiff submitted grievance ECF 2015-10-2880-12z3 (ECF No. 68-6, PageID.625-629) at Step I on October 7, 2015, but instead of waiting to exhaust this claim through Step III, he filed this lawsuit on January 8, 2016. Plaintiff's Step III response was mailed on March 31, 2016, within the time allotted to resolve grievances, but after he had already filed his complaint in this court. Similarly, Plaintiff submitted grievance ECF 2015-10-2856-12z3 (ECF No. 68-6, PageID.630-634) at Step I on October 5, 2015, but instead of waiting to exhaust this claim through Step III, he filed this lawsuit. Plaintiff's Step III response was mailed on March 31, 2016, within the time allotted to resolve grievances, but after he had already filed his complaint in this court. In the opinion of the undersigned, neither grievance ECF 2015-10-2880-12z3 nor grievance ECF 2015-10-2856-12z3 properly exhausted any claims prior to the filing of this complaint. The Sixth Circuit has squarely held that a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). The administrative process must be complete before the prisoner files an action in federal court. *Id.*

Plaintiff named Dr. Crompton in ECF 2015-10-2925-28A (ECF No. 68-6, PageID.696-699), in which he alleged that Dr. Crompton was deliberately indifferent to Plaintiff's work related left arm injury. This grievance was rejected at Step II as duplicative of ECF 2015-07-2082-12D3. (ECF No. 68-6, PageID.686-690).

Plaintiff submitted two grievances naming Defendant PA Paquette. In URF 2015-05-1265-12e (ECF No. 68-6, PageID.691-695). Plaintiff asserts that he was denied treatment for his arm injury specifically naming Defendant PA Paquette. In URF 2015-05-1530-01G (ECF No. 56-4, PageID.374-379) Plaintiff named Defendant PA Paquette and asserted that he was improperly charged a co-pay. That grievance was rejected as untimely at Step III.

Plaintiff named Defendant NP. Wilson in two grievances asserting improper treatment regarding his left arm. Plaintiff failed to properly file URF 1502-0487-28D because that grievance was rejected for including harassing and demeaning language and did not exhaust any claims. (ECF No. 56-4, PageID.425-430). In URF 2015-05-1502-12e (ECF No. 56-4, PageID.399-403), Plaintiff alleged that he was not properly treated for a left arm injury. Plaintiff specifically named NP Wilson in that grievance. Plaintiff exhausted this claim to Step III.

In the opinion of the undersigned, Plaintiff failed to exhaust claims against Defendants NP Wilson, PA Paquette, and Dr. Crompton regarding his medical treatment for gastrointestinal and scabies concerns. Plaintiff exhausted his left arm claim against Defendants NP Wilson, PA Paquette, and Dr. Crompton. Plaintiff exhausted his claims against Defendant PA Millette.

Defendants NP Wilson, PA Paquette, Dr. Crompton, and PA Millette move for summary judgment on Plaintiff's Eighth Amendment claim by arguing that Plaintiff cannot establish that Defendants acted with deliberate indifference to Plaintiff's serious medical needs. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102,

103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439,

440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

The medical records show that Plaintiff has received extensive medical care while confined in the MDOC. Specifically, in the opinion of the undersigned, Plaintiff cannot show that any Defendant acted with deliberate indifference toward his arm injury. On February 11, 2015, Plaintiff was seen by a nurse after he complained that he injured his left elbow while shoveling snow. (ECF No. 70-1, PageID.863-867). Plaintiff was diagnosed with a muscle strain or sprain and provided with ice and ibuprofen. On February 13, 2015, Plaintiff was examined for left elbow pain and stated that he ruptured his tendon. (PageID.868-871). Plaintiff was assessed with a strain/sprain and referred to Defendant NP Wilson. Defendant NP Wilson examined Plaintiff the same day noting no obvious deformities. (PageID.874-875). Defendant NP Wilson ordered a steroid injection, steroid medication, and an x-ray. The x-ray was taken on February 17, 2015, showed mild soft tissue swelling at the left elbow, but was otherwise normal. (PageID.878-879). Plaintiff insisted that his arm was broken, but he continued to receive treatment for a strain by health care staff.

On March 6, 2015, NP Wilson saw Plaintiff who complained that his arm was either broken or a tendon had ruptured. NP Wilson informed Plaintiff that there was no fracture or ruptured tendon in his arm. NP Wilson examined Plaintiff's arm and reviewed the x-ray with Plaintiff. NP Wilson offered to place Plaintiff on a one week medical detail which Plaintiff refused. (PageID.904-906). Plaintiff commented that "of course" the x-ray was negative for a

fracture because it was taken eight days after the injury. Plaintiff was treated for complaints of arm pain in April of 2015 by other medical staff.

Plaintiff saw Defendant PA Paquette on May 6, 2015. (PageID.933-935). Plaintiff reported increased pain in his left bicep and noticed that his tendon increased in size when he flexed his arm. Plaintiff complained that he could not lift a 55 pound dumbbell. Defendant PA Paquette examined Plaintiff and found no physical abnormalities and that his tendon was intact.

Plaintiff was transferred to the Oaks Correctional Facility from the Chippewa Correctional Facility in July of 2015. At the Oaks Correctional Facility, Plaintiff reported that he had broken his left arm a few weeks earlier. (PageID.960). No physical deformities were observed. Defendant PA Millette saw Plaintiff on July 21, 2015. (PageID.968-971). Plaintiff insisted that he had a ruptured left forearm tendon and demanded an MRI because he did not believe the x-ray finding. PA Millette found no medical need for an MRI and instructed Plaintiff to purchase Tylenol for pain. Plaintiff complained that he had scabies and was not being treated. Plaintiff had some lesions around his buttocks area, but PA Millette determined that they were not scabies. Triamcinolone was discontinued and Plaintiff was instructed to use Vaseline or an antibiotic ointment.

Dr. Bonefeld saw Plaintiff on July 30, 2015, noting no apparent distress and no skin lesions. (PageID.981-982). Plaintiff was examined by Defendant Dr. Crompton on August 19, 2015. (PageID1043-1044) and was given a topical steroid for mild eczema. Dr. Crompton decided that due to Plaintiff's fixation on scabies, a treatment for scabies would cause no harm and would possibly alleviate Plaintiff's concerns. Plaintiff was given Benadryl and Permeithrin cream, and his bedding and clothing were washed. (PageID.1048-1055) (Affidavit of Dr. Crompton ECF No. 68-2, PageID.553). During this time period, Plaintiff was involved in hunger strikes and was

monitored by health care staff. Plaintiff continued to assert that he fractured his arm, but received no treatment. (PageID.1174). Dr. Crompton examined Plaintiff on October 12, 2015, for complaints of left elbow pain, after Plaintiff continued to assert that he had fractured his arm. (PageID.1198-1199). Dr. Crompton ruled out a fracture, but noted that the injury appeared to be related to some type of disruption of the anular ligament in the elbow. Dr. Crompton noted that symptomatic treatment was appropriate, but would not prescribe Tylenol due to Plaintiff's compromised nutritional status. Dr. Crompton instructed Plaintiff to rest and stretch when he experienced pain. (Affidavit of Dr. Crompton, ECF No. 68-2, PageID.561). Dr. Crompton described Plaintiff's ligament disruption as mild and not significantly interfering with left arm function. Treatment included rest, stretching and range of motion exercise, and over-the-counter pain medication. (PageID.562). Dr. Crompton did not see Plaintiff after November 2, 2015. Plaintiff continued medical treatment with other health care providers and continued to assert that he fractured his left arm at the elbow and that he had torn his tendons. After Plaintiff was transferred to the Macomb Correctional Facility, he saw Dr. Abdellatif for gastrointestinal complaints and left arm pain. Dr. Abdellatif found no abnormalities. (PageID.1383-1385).

In the opinion of the undersigned, Plaintiff cannot establish that his Eighth Amendment rights were violated by any Defendant. Plaintiff received comprehensive medical care from Defendants and other health care providers. Plaintiff simply disagrees with the medical assessment of these health professionals. Plaintiff has completely failed to set forth any facts which could establish that any Defendant was deliberately indifferent to his medical needs. The record establishes otherwise. In the opinion of the undersigned, no genuine issue of fact exists and Defendants are entitled to dismissal of this complaint.

For the foregoing reasons, I recommend that the motion for summary judgment filed by Defendants Covert, Filion, and Monroe (ECF No. 55) be granted, dismissing them without prejudice due to Plaintiff's failure to exhaust his administrative grievance remedies. It is further, recommended that the motion for summary judgment filed by Defendants Wilson, Crompton, Millette, and Paquette (ECF No. 68) be granted, dismissing Plaintiff's claims asserting deliberate indifference to his gastrointestinal and scabies concerns against Defendants Wilson, Paquette, and Crompton without prejudice due to Plaintiff's failure to exhaust his administrative grievance remedies, and dismissing Plaintiff's remaining claims against Defendants Wilson, Paquette, Crompton, and Millette with prejudice. In addition, it is recommended that the Court deny Plaintiff's motion for a declaratory judgment (ECF No. 77). If the Court accepts this recommendation, the case will be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   January 10, 2018

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).